IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

NATIONWIDE INSURANCE COMPANY                                      PLAINTIFF

V.                                              CAUSE NO.: 1:12CV181-SA-DAS

LEXINGTON RELOCATION SERVICES, LLC;
GUM TREE PROPERTY MANAGEMENT, LLC;
THE SOUTHERN GROUP OF MISSISSIPPI, INC.;
WILSON COLEMAN; MISTY MCGUIRE; and
JOHN DOES 1-10                                                  DEFENDANTS

_____

GUM TREE PROPERTY MANAGEMENT, LLC;
THE SOUTHERN GROUP OF MISSISSIPPI, INC.; and
WILSON COLEMAN                                          COUNTER-PLAINTIFFS

V.

NATIONWIDE INSURANCE COMPANY                            COUNTER-DEFENDANT

_____

MEMORANDUM OPINION

Nationwide Insurance Company and Gum Tree Property Management, The Southern

Group of Mississippi, and Wilson Coleman have filed three separate motions for partial

summary judgment [51, 75, 151] regarding whether Nationwide owes a duty to defend or

indemnify the insureds pursuant to a series of insurance policies held in their names.  Because

judgment as a matter of law is appropriate, the Court finds that Nationwide does not have a duty

to defend or indemnify Gum Tree Property Management, The Southern Group of Mississippi, or

Wilson Coleman. [1]  Accordingly, Nationwide's Motion for Partial Summary Judgment [51] is

---

[1] Nationwide has additionally filed a Motion for Summary Judgment [152] seeking a declaration that the denial of
coverage was proper due to Gum Tree Property Management, The Southern Group, and Wilson Coleman failing to
comply with duties under the insurance policies.  Because the Court finds that coverage is not available under the

GRANTED, Gum Tree's Motion for Summary Judgment [75] is DENIED, and Nationwide's Motion for Partial Summary Judgment [151] is GRANTED. The remaining outstanding motions in this case will be addressed by separate memorandum opinion.

*Factual and Procedural Background*

At all times relevant, the Gum Tree Defendants[2] were covered by nine different insurance policies issued by Nationwide Insurance Company. After the institution of a suit against them by Lexington Relocation Services, Inc., in the Kentucky state court system, the Gum Tree Defendants inquired as to defense and indemnity coverage pursuant to those policies. Nationwide issued a determination letter that no coverage was available under those policies.

Nationwide then instituted this suit seeking a declaration that that the insurance policies do not provide coverage, including the duty of defense or indemnification, to The Southern Group of Mississippi, and Gum Tree Property Management LLC, and Wilson Coleman, as to the claims made by Lexington Relocation. The Gum Tree Defendants counterclaimed for a declaration that Nationwide is required to defend and indemnify The Southern Group and Gum Tree pursuant to those nine insurance policies for the claims asserted against them in the underlying Kentucky litigation.

The parties have requested summary judgment on the basis that judgment as a matter of law is appropriate to the determination of whether, pursuant to the policies of insurance, Nationwide has a duty to defend and/or indemnify Gum Tree and/or Wilson Coleman against the claims in the underlying litigation, and whether the insurance policies issued to The Southern Group provide coverage for the underlying suit.

---

policies at issue and enters judgment in favor of Nationwide, consideration of the issues addressed in that Motion for Summary Judgment is not necessary. Nationwide's Motion for Summary Judgment [152] is therefore, MOOT.

[2] For ease of reference, The Southern Group, Gum Tree Property Management, and Wilson Coleman are referred to as the "Gum Tree Defendants" only with respect to the pending federal litigation. When discussing the underlying Kentucky state litigation, the Court will refer to them by their individual names.

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts demonstrating a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The court is only obligated to consider cited materials but may consider other materials in the record. Id. at 56(c)(3). The court must resolve factual controversies in favor of the nonmovant "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Discussion and Analysis*

Mississippi substantive law applies in this diversity case. See Barden Miss. Gaming Ltd. Liab. Corp. v. Great N. Ins. Co., 638 F.3d 476, 478 (5th Cir. 2011). In Mississippi, "the interpretation of an insurance policy is a question of law, not one of fact." Corban v. United Services Auto. Ass'n., 20 So. 3d 601, 609 (Miss. 2009) (quoting Noxubee Co. Sch. Dist. v. United Nat'l Ins. Co., 883 So. 2d 1159, 1165 (Miss. 2004)). Insurance policies are contracts, and as such, must be enforced according to their written provisions. Id. (citing Noxubee Co., 883 So. 2d at 1166). When parties to a contract make mutual promises, they are entitled to the benefit of that bargain and insurance companies must therefore be able to "rely on their statements of coverage, exclusions, disclaimers, definitions, and other provisions." Id. As such, the court relies upon familiar rules of construction to discern their meaning. Progressive Gulf Ins. Co. v. We Care Day Care Center, Inc., 953 So. 2d 250, 253 (Miss. Ct. App. 2006).

The policy is to be considered as a whole, giving weight to all relevant portions and, whenever possible, giving "operable effect to every provision in order to reach a reasonable overall result." Id. (citing J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co., 723 So. 2d 550, 552 (Miss. 1998)). While ambiguities in an insurance contract are to be construed against the insurer, a clear and unambiguous contract will be enforced as written. Id. In reviewing a policy, terms should be understood in their "plain, ordinary, and popular sense rather than in a philosophical or scientific sense." Blackledge v. Omega Ins. Co., 740 So. 2d 295, 298 (Miss. 1999).

An insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations of wrongdoing asserted in the underlying action. See Delta Pride Catfish, Inc. v. Home Ins. Co., 697 So. 2d 400, 403 (Miss. 1997). Not surprisingly, "the duty to

defend is broader than the insurer's duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy." Titan Indem. Co. v. Pope, 876 So. 2d 1096, 1101 (Miss. Ct. App. 2004) (quoting Merchants Co. v. Am. Motorists Ins. Co., 794 F. Supp. 611, 617 (S.D. Miss. 1992)).

The general rule under Mississippi law is that an insurer's duty to defend hinges on the allegations in the underlying complaint. American States Ins. Co. v. Natchez Steam Laundry, 131 F.3d 551, 552 (5th Cir. 1998) (citing State Farm Mut. Auto. Ins. Co. v. Taylor, 233 So. 2d 805, 808 (Miss. 1970)). That duty is measured by the "allegations in the plaintiff's pleadings regardless of the ultimate outcome of the action." Id. (citing EEOC v. Southern Pub. Co., 894 F.2d 785, 789 (5th Cir. 1990)). As such, "if the factual allegations of the complaint bring the action within the coverage of the policy, 'irrespective of what the actual facts may later prove to be,' the insurer is contractually bound to defend its insured.'" Meng v. Bituminous Cas. Corp., 626 F. Supp. 1237, 1240 (S.D. Miss. 1986) (citing Preferred Risk Mut. Ins. Co. v. Poole, 411 F. Supp. 429, 435 (N.D. Miss. 1976)).

A court may consider facts not contained in the underlying pleadings where the insurer is "presented with extrinsic facts, of which the insurer has knowledge or could obtain knowledge by means of a reasonable investigation, that trigger coverage under the policy." Mulberry Square Prods. v. State Farm Fire & Cas. Co., 101 F.3d 414, 422 (5th Cir. 1996) (citing Merchants Co. v. Amer. Motorists Ins. Co., 794 F. Supp. 611, 617 (S.D. Miss. 1992)). However, a "true facts" analysis is a "narrow exception" to the general rule. Am. States Ins. Co. v. Natchez Steam Laundry, 131 F.3d 551, 553 (5th Cir. 1998); Farmland Mut. Ins. Co. v. Scruggs, 886 So. 2d 714, 719 (Miss. 2004); Mavar Shrimp & Oyster Co. v. U.S. Fid. & Guar. Co., 187 So. 2d 871, 875 (Miss. 1966).

The Mississippi Supreme Court has held that if an insured submits uncontroverted, competent evidence establishing the falsity of the pertinent allegations in the complaint, the insured has provided "true facts" under the exception. See Mavar Shrimp & Oyster Co., 187 So. 2d 871. The underlying complaint in Mavar alleged that the plaintiff sustained injuries while an "employee" of the insured. Id. at 872. The insurance policy excluded coverage for injuries sustained by "employees" of the insured. Id. at 873. In determining whether a duty to defend arose from that policy, the Mississippi Supreme Court held that an insurer was obligated to provide a defense despite the fact that the underlying complaint alleged facts that did not bring the case within the policy's coverage. Id. at 872-74. The insured satisfied the "extrinsic acts" exception and established the "true facts" by proving: (1) the insurer knew of the insured's contention that the third party plaintiff was not an "employee" at the time he was injured; and (2) the insurer knew that the insured "had been successful in maintaining in other cases that other persons in the same status . . . were not its employees." Id. at 874. Based on these two facts, the Mavar Court held the insurer was obligated to defend the insured. Id. at 875.

"True facts" have also been found where the record evidence unanimously supported coverage under the policy. See Meng, 626 F. Supp. at 1237. In Meng, the underlying complaint alleged unspecified "damages" caused by a defective sprinkler system installed by the insured. Id. at 1238. The policy in Meng excluded liability for damages to the sprinkler system, but not for damage caused to other property by the sprinkler system. Id. at 1239-40. Deposition testimony by the third party plaintiff established that his suit primarily sought recovery for damages to other property caused by the sprinkler system. Id. at 1241. No evidence in the record contradicted this assertion. See id. As a result, the district court held that once the insurer

received notice of the deposition testimony, it "had an obligation to defend since the facts indicated coverage." Id.

However, "[n]otwithstanding the decisions in Mavar and Meng, the insured cannot establish 'true facts' by merely denying the allegations in the underlying complaint." Nationwide Mut. Fire Ins. Co. v. Knight, 2008 U.S. Dist. LEXIS 105342, *12 (S.D. Miss. Sept. 16, 2008). The alleged "true facts" under the "extrinsic facts" exception must be supported by competent summary judgment evidence and must constitute a "fact," not merely a denial of liability. See Natchez Steam Laundry, 131 F.3d at 553 (rejecting as "true facts" insured's assertion to insurance company that actions alleged were unintentional and therefore covered by the insurance policy). As the Natchez Steam Laundry court explained, if courts deemed such an assertion to be sufficient under Mavar, every insured could simply deny the allegations in the underlying complaint and thereby "eviscerate Mississippi's general rule - that an insurer can determine whether it has a duty to defend by comparing the complaint to the policy." Id. at 553-54.

The Gum Tree Defendants contend that Nationwide was apprised of the underlying complaint and these documents produced by Gum Tree in the underlying litigation: Motion Seeking Continuance of Deadline with respect to . . . Lexington Relocation's Discovery Requests, Reply to that motion, Motion to Dismiss for Lack of Personal Jurisdiction, and Reply to that motion. Gum Tree Defendants have also attached emails from their attorney to the Nationwide adjuster explaining the Gum Tree Defendants' positions. The Court has reviewed those documents and deems them not to contain "true facts" and as such, their consideration is not warranted in determining whether a duty to defend arises in the underlying lawsuit.

The Gum Tree Defendants highlight several issues in these documents to show that the underlying lawsuit was covered pursuant to the applicable insurance policies. In particular, the documents make conclusory statements that the Gum Tree Defendants are not competitors with Lexington Relocation. Further, those documents claim that the underlying violations alleged against the Gum Tree Defendants involved advertising of the Gum Tree products and services. The documents offered by the Gum Tree Defendants contain only denials of the allegations in the underlying complaint. Natchez Steam Laundry, 131 F.3d at 553 (holding that alleged "true facts" under the "extrinsic facts" exception must be supported by competent summary judgment evidence and must constitute a "fact," not merely a denial of liability). The statements made in those documents have not been shown to constitute "facts," just denials of the underlying allegations. The Court finds that consideration of those documents that the Gum Tree Defendants contend should be reviewed is not warranted under the "true facts" exception. However, even if the Court analyzed those documents as "true facts," coverage would still be lacking.

With these principles in mind, the Court must determine whether the allegations in the underlying complaint trigger the duty to defend under the applicable insurance policies, or if any exclusions apply to prevent coverage. See Nationwide Mut. Ins. Co. v. Lake Caroline, Inc., 515 F.3d 414, 418-19 (5th Cir. 2008).

I.    Underlying Complaint

Lexington Relocation Services filed suit in Kentucky against Gum Tree Property Management, The Southern Group of Mississippi (TSG), Wilson Coleman, individually and in his capacity as President and Manager of Gum Tree Property Management and President of

TSG, and Misty McGuire in the Fayette Circuit Court in Kentucky.  The allegations contained in the underlying complaint are as follows:

Lexington Relocation is a corporate housing company providing quality lodging in Kentucky, Ohio, Indiana, California, and Mississippi, for individuals relocating or temporarily away from home.  Lexington Relocation hired Misty McGuire as an "Account Specialist" in 2003.  She was required to execute an Employment Agreement which contained a non-disclosure provision prohibiting McGuire from using or disclosing Lexington Relocation's confidential information without prior written consent from the company.   Another provision of the agreement contained a covenant not to compete which prohibits McGuire from working for or assisting any entity that competes with, or may compete with, Lexington Relocation within the business jurisdiction of that company for a period of one year after separation from employment. McGuire was further prohibited from being employed in the lodging business in the greater Lexington area for a period of one year post-employment.  The agreement additionally contained a non-solicitation provision prohibiting McGuire from directly or indirectly soliciting any of Lexington Relocation's clients, customers, or employees unless on Lexington Relocation's behalf.   She was further barred from interfering with Lexington Relocation's business relationships. In her capacity as Account Specialist, Lexington Relocation alleges that McGuire had access to and received trade secrets, confidential and proprietary business information, including information about customers and pricing, and developed personal business relationships with Lexington Relocation's clients and customers.

McGuire resigned from her position with Lexington Relocation on July 2, 2010. Lexington Relocation alleges that in the year following her resignation, Lexington Relocation's competitors, Gum Tree, TSG, and Coleman, solicited and received services and/or assistance

from McGuire. Those services and assistance, Lexington Relocation asserts, violated the terms of McGuire's Employment Contract of which Gum Tree, TSG and Coleman were aware. In fact, Lexington Relocation insists that McGuire was employed in a marketing and sales position performing substantially the same tasks and function for Gum Tree, TSG, and Coleman as she did for Lexington Relocation. Lexington Relocation additionally claims that Gum Tree, TSG, and Coleman solicited and received confidential trade secrets and information from McGuire and used that information to solicit Lexington Relocation's current and prospective customers. As a result of the defendants' actions, Lexington Relocation asserts it suffered prejudice and incurred damages. The complaint alleges ten distinct causes of action:

Count I: Tortious Interference with Contractual Relations

Lexington Relocation claims that Gum Tree, TSG, and Coleman were aware of and intentionally interfered with McGuire's contractual obligations to Lexington Relocation by employing her and receiving confidential information without proper authorization. The complaint cites that the defendants' actions caused a breach of McGuire's Employment Agreement with Lexington Relocation.

Count II: Tortious Interference with Actual and Prospective Business Advantages

Lexington Relocation's complaint alleges that Gum Tree, TSG, and Coleman have interfered with Lexington Relocation's actual and prospective business relationships and customers by "the unauthorized use of Lexington Relocation's confidential information and by leveraging relationships McGuire established with Lexington Relocation's customers in her capacity as Account Specialist for Lexington Relocation." Moreover, those defendants "have also solicited Lexington Relocation's customers on behalf or [sic] themselves and/or another entity with the improper advantage of knowing the terms and conditions, pricing, preferences

and other information concerning Lexington Relocation and its customers and their business dealings with Lexington Relocation." Further, Lexington Relocation alleges that the defendants "have intentionally and lawfully [sic] induced, persuaded or otherwise caused third parties not to enter into or continue their contractual and/or business relationships with Lexington Relocation or have prevented others from acquiring or continuing relationships with Lexington Relocation . . . ."

Count III: Civil Conspiracy

Lexington Relocation argues that the defendants conspired among themselves and with third parties to deprive or deceive Lexington Relocation of actual and prospective business opportunities.

Count IV: Conversion

The complaint states that Lexington Relocation legally owned and has the right of possession of its confidential information and trade secrets, the defendants wrongfully accessed those trade secrets without authorization, and defendants have failed to return that information.

Count V: Breach of Fiduciary Duty

Lexington Relocation asserts that Misty McGuire served in a fiduciary capacity during her employment and has breached that duty by "engaging in an activity to steal business from Lexington Relocation and sharing Lexington Relocation's confidential information and trade secrets."

Count VI: Breach of Duty of Loyalty

Lexington Relocation contends that McGuire owed it a duty of loyalty during employment and that her actions as an employee – i.e., engaging in activity to steal business and

share Lexington Relocation's confidential information and trade secrets with its competitors – violated that duty.

Count VII: Aiding and Abetting a Fiduciary Breach

The seventh count of the underlying complaint claims that Gum Tree, TSG, and Coleman knew that McGuire owed a fiduciary duty to Lexington Relocation and "facilitated and/or encouraged McGuire to breach her fiduciary duty to Lexington Relocation."

Count VIII: Misappropriation of Trade Secrets

Lexington Relocation contends that by virtue of her employment relationship, McGuire had "access to, and direct knowledge of, Lexington Relocation's trade secrets and other confidential and proprietary business information." That entity further asserts that McGuire had a duty to maintain the secrecy of those trade secrets and "limit their use." By Kentucky Law, Lexington Relocation argues, Gum Tree, TSG, and Coleman were obligated to refrain from improperly accessing, using or disclosing Lexington Relocation's trade secrets. The complaint further contends that Gum Tree, TSG and Coleman "misappropriated, obtained by improper means and used Lexington Relocation's trade secrets and confidential and proprietary business information on behalf of themselves . . ." and/or McGuire.

Count IX: Fraud

Lexington Relocation also makes a claim that Gum Tree, TSG, and Coleman "intentionally asserted false information and/or willfully failed to disclose the truth for the purpose of deceiving Lexington Relocation and inducing Lexington Relocation to act upon the false information and/or willful omissions."

Count X: Negligent Misrepresentation

The underlying complaint alleges that defendants made "false representations about material facts, including services performed by McGuire, McGuire's relationship with Vesta Executive Housing and/or McGuire's relationship with the other Defendants in this action." These false representations, Lexington Relocation claims, occurred in the course of defendants' business transactions to induce Lexington Relocation's reliance and were made without exercising reasonable care.

Count XI: Unjust Enrichment

Lexington Relocation asserts that defendants have obtained and continue to obtain a benefit for which they have not paid and which they are not entitled.

Count XII: Unfair Competition

Defendants have unlawfully used Lexington Relocation's confidential information and/or trade secrets in competition with Lexington Relocation and in order to gain an advantage against that entity and in the marketplace, according to the underlying complaint. Lexington Relocation asserts that defendants have caused a commercial disadvantage to that entity.

Count XIII: Negligence Per Se

According to Kentucky law, Lexington Relocation insists, defendants had a duty not to tamper with or fabricate physical evidence while an official proceeding is pending or may be instituted. Lexington Relocation contends defendants were aware of its action against McGuire individually and, regardless of that fact, violated Kentucky law.

II.     Applicable Insurance Provisions

Gum Tree, TSG, and Wilson Coleman have counterclaimed seeking a declaration that pursuant to Nationwide's insurance policies, those entities are owed a duty of defense and indemnification for the claims asserted against them in the underlying Kentucky complaint. In

particular, the Gum Tree Defendants assert the underlying complaint alleges a personal and/or advertising injury of which Nationwide has agreed to provide coverage.[3] Although the insurance policies are not uniform, the language and definitions contained in each are similar to the extent that analysis of one can apply to all. Where the differences in language are relevant, the Court will address the particular policies. Therefore, while the Court only cites for the summary judgment record the language from Nationwide policy 63 PR 274471-3002 issued to The Southern Group, the Court has reviewed each policy individually and makes the following legal determinations:

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies . . .

SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For purposes of this definition:

   a. Notices that are published including material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of

---

[3] The Gum Tree Defendants failed to address Nationwide's arguments in the summary judgment briefing regarding bodily injury or property damage. Accordingly, those positions are waived and the Court will only address those provisions that the Gum Tree Defendants have argued provide coverage. See Sanders v. Sailormen, Inc., 2012 U.S. Dist. LEXIS 26462, 2012 WL 663021, *3 & n.30 (S.D. Miss. Feb. 28, 2012) ("Failure to address a claim results in the abandonment thereof."), aff'd, 12-60224, 506 F. App'x 303 (5th Cir. Jan. 7, 2013).

attracting customers or supporters is considered an advertisement.

* * *

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

* * *

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

III.   Are the underlying complaint allegations covered by any insurance policy?

As an initial matter, the Court finds that Nationwide policy ACP CAF 5604905932 does not provide coverage as it requires an "occurrence" for application to a "personal or advertising injury."  That umbrella liability policy provides: "Under Coverage B, we will pay on behalf of the 'insured' damages  [] the 'insured' becomes legally obligated to pay by reason of liability imposed by law because of 'bodily injury', 'property damage', or 'personal and advertising injury' covered by this insurance which . . . is caused by an 'occurrence.'"  Occurrence is later defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Pursuant to the policy language, there was no "accident" or continued exposure resulting in the alleged injury here.   Moreover, the Gum Tree Defendants have failed to rebut Nationwide's claim that there was no "occurrence" involved in this instance.

Accordingly, the Gum Tree Defendants have abandoned that claim and insurance policy ACP CAF 5604905932 does not apply. See Sanders, 2012 U.S. Dist. LEXIS 26462, 2012 WL 663021, *3 & n.30. Regardless of whether that policy required an "occurrence," however, coverage would still be lacking as shown below.

The Gum Tree Defendants assert the underlying allegations are covered by the insurance policies as either a personal injury or advertising injury.

*a. Personal Injury*

"Personal injury" is defined by the majority of the Nationwide policies at issue in this litigation as injury caused by "oral or written publication of material that . . . disparages a person's or organization's good, products or services." See Nationwide policies 63 BP 272-932-3001(F)(11)(d); 63 CU 272932-3002(VII)(K)(2); 63 CU 27441-3003(VII)(C)(1) (defining "advertising injury" with same offense); ACP BPHM 5604706782(V)(14)(d); ACP CAF 5604706782(Definitions(C)(11)(d)); ACP CAF 5604905932(Definitions(B)(14)(d)); ACP GLGO 5614905932(V)(14)(d); and ACP GLO 5604905932(V)(14)(d) (all defining "personal and advertising injury" the same). Another variation similarly defines "personal injury" as injury arising out of the "publication or utterance of libel or slander or of other defamatory or disparaging material, or of publication or utterance in violation of an individual's right of privacy." Nationwide policies 63 CU 27441-3003(VII)(K)(2); 63 PR 27441-3002(V)(14)(d) (defining "personal and advertising injury" in same manner);

Gum Tree cites to several paragraphs in the underlying complaint as allegations of disparagement by Lexington Relocation. In particular, Gum Tree contends that the statement that the Gum Tree Defendants "improperly acquired and used Lexington Relocation's trade secrets and confidential and proprietary business information to solicit Lexington Relocation's

current and/or prospective customers" constitutes "disparaging material."  Further, the Gum Tree Defendants cite the paragraph noting that the confidential information was acquired and used to "divert Lexington Relocation's current and/or prospective customers away from Lexington Relocation."  Lexington Relocation's Count Two – Tortious Interference with Actual and Prospective Business Advantages – is also put forth as an alleged disparagement of Lexington Relocation's "goods, products, or services."

Setting aside the contention of Nationwide that no oral or written publication has been alleged in the underlying complaint, the Court notes that there are no allegations that the Gum Tree Defendants "disparaged" Lexington Relocation while allegedly soliciting its current and prospective customers.  Although the insurance policies do not define "disparage," the Court relies on the "plain, ordinary and popular" understanding of the term to make this determination.  See Blackledge, 740 So. 2d at 298.  The Merriam-Webster Dictionary denotes that the term "disparage" means "to describe (someone or something) as unimportant, weak, bad, etc.; to lower in rank or reputation."  Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/disparage (last visited Mar. 6, 2014).  No paragraph in the underlying complaint makes reference to the Gum Tree Defendants using the trade secrets or confidential information allegedly gained from Misty McGuire to explicitly criticize Lexington Relocation to its current or prospective clients.  Indeed, the underlying complaint makes reference to the Gum Tree Defendants soliciting those customers "with the improper advantage of knowing the terms and conditions, pricing, preferences and other information concerning Lexington Relocation and its customers and their business dealings with Lexington Relocation."  As such, Lexington Relocation never complains that the Gum Tree Defendants actively disparaged or belittled that

entity to its current or prospective clients. Accordingly, the Court finds no duty to defend based on that offense as a "personal injury" or "personal and advertising injury."

The Gum Tree Defendants additionally claim that the underlying complaint alleges a violation of an "individual's right to privacy" such that there would be duty to defend under that policy. All of the insurance policies issued to the Gum Tree Defendants define "personal injury" or "personal and advertising injury" to include "oral or written publication of material that violates a person's right of privacy." See Nationwide policies 63 BP 272-932-3001(F)(11)(e); ACP BPHM 5604706782(V)(14)(e); ACP CAF 5604706782(Definitions (C)(11)(e)); 63 CU 272932-3002(VII)(K)(2); 63 PR 37441-3002(V)(14)(e); 63 CU 27441-3003(VII)(C)(2); ACP CAF 5604905932 (Definitions(B)(14)(e)); ACP GLGO 5614905932(V)(14)(e); ACP GLO 5604905932(V)(14)(e).

The Gum Tree Defendants contend that the underlying complaint claims that they infringed upon Lexington Relocation's right of privacy by acquiring their confidential information without permission. Although the term "person" is not defined by the applicable insurance policies, because the phrase "persons or organizations" is used in the surrounding provisions, the policies clearly differentiate between an individual and a business. See Corban v. United Servs. Auto. Ass'n, 20 So. 3d 601, 609 (Miss. 2009) (noting that insurance policies are contracts which must be enforced according to their written provisions); Blackledge, 740 So. 2d at 298 (holding that insurance policy terms should be understood in their "plain, ordinary, and popular sense rather that in a philosophical or scientific sense"). There is no dispute that Lexington Relocation is a business or organization. Therefore, the provision defining "personal injury" or "personal and advertising injury" as an offense that violates a person's right of privacy

does not to apply in this case. No duty to defend arises out of allegations infringing on Lexington Relocations right to privacy.

*b. Advertising Injury*

The insurance policies at issue here apply to "advertising injury" caused by "an offense committed in the course of advertising your goods, products or services." The policies further define the offenses for which coverage for advertising injuries are available. Some of those offenses mirror the offenses covered as "personal injuries," i.e., "oral or written publication of material that . . . disparages a person's or organization's goods, products or services," and "oral or written publication of material that violates a person's right of privacy." For the reasons stated above, those "offenses" are not alleged in the underlying complaint or are not applicable in this instance.

In order for the Gum Tree Defendants to show that an advertising injury was alleged in the underlying complaint, it must first be established that the alleged offense was "committed in the course of advertising [its] goods, products or services." The Mississippi Supreme Court has held that a court's role in reviewing an insurance contract is to "render a fair reading and interpretation of the policy by examining its express language and applying the 'ordinary and popular meaning' to any undefined terms." Corban v. United Servs. Auto. Ass'n, 20 So. 3d 601, 609 (quoting Noxubee County Sch. Dist. v. United Nat'l Ins. Co., 883 So. 2d 1159, 1165 (Miss. 2004)). The Mississippi Supreme Court has interpreted the term "advertising" in insurance contracts to mean "widespread promotional activities directed to the public at large." Delta Pride Catfish v. Home Ins. Co., 697 So. 2d 400, 404 (Miss. 1997) (citations omitted).

Because there is no definition for "advertising" in policies 63 BP 272-932-3001, 63 CU 27441-3003, ACP CAF 5604905932, the Court looks to case law to determine whether

19

Lexington Relocation made any allegations that the wrongdoing was a result of the Gum Tree Defendants advertising their own products. Here, there is no allegation in the underlying complaint that the Gum Tree Defendants directed any promotional activities to the public at large. See id. (finding no "advertising injury" where underlying complaint alleged letters sent to customers).[4] At most, the complaint alleges the Gum Tree Defendants funneled their efforts to current or prospective clients of Lexington Relocation. Therefore, no duty to defend arises under policies 63 BP 272-932-3001, 63 CU 27441-3003, ACP CAF 5604905932 for advertising injury.

The policies listed as ACP CAF 5604706782, ACP BPHM 5604706782, 63 PR 27441-3002, ACP CAF 5604905932, ACP GLGO 5614905932, and ACP GLO 5604905932 define "advertisement" as "a notice that is broadcast or published to the general public *or* specific market segments about your goods, products or services for the purpose of attracting customers or supporters." See Nationwide policies ACP CAF 5604706782(Definitions)(C)(1); ACP BPHM 5604706782(V)(1); 63 PR 27441-3002(V)(1); ACP CAF 5604905932(Definitions(B)(1)); ACP GLGO 5614905932(V)(1); ACP GLO 5604905932(V)(1). Gum Tree contends that the underlying complaint alleges that those defendants broadcast information about its services to the "specific market segment" of Lexington Relocation's current and prospective customers, such that the Court should find an allegation of an "advertisement" pursuant to those policies.

---

[4] The Court acknowledges that the Southern District of Mississippi has held that "where a direct competitor allegedly acquires and uses the customer list of another company in order to send direct mall [sic] solicitations for business to the competitor, . . . such conduct is within the definition of conduct committed within the course of advertising" where "advertisement" was not defined under insurance policies at issue there. Merchants Co. v. American Motorists Ins. Co., 794 F. Supp. 611, 619 (S.D. Miss. 1992). However, based on the Court's research as well as the case law submitted by the parties, this case seems anomalous. Moreover, as the Delta Pride case has been more recently decided by the Mississippi Supreme Court, interpreting Mississippi law, the Court relies on the findings of that case.

Regardless of whether the actions alleged to be taken by the Gum Tree Defendants in the underlying complaint constituted an "advertisement," those defendants cannot show that any allegation falls under an "offense" pursuant to those policies. Indeed, aside from the offenses outlined above for disparagement and a person's right of privacy, the several insurance policies at issue define "[p]ersonal and advertising injury" as injury arising from "the use of another's advertising idea in your 'advertisement' or . . . infringing upon another's copyright, trade dress or slogan in your advertisement." <u>See</u> Nationwide policies ACP BPHM 5604706782(V)(14)(f),(g); ACP CAF 5604706782(Definitions (C)(11)(g),(h)); 63 PR 27441-3002(V)(14)(f),(g); ACP CAF 5604905932(Definitions (B)(14)(g),(h)); ACP GLGO 5614905932(V)(14)(f),(g); ACP GLO 5604905932(V)(14).

The allegations in the underlying complaint do not implicate an injury arising from "the use of another's advertising idea in your advertisement." As noted, Lexington Relocation contends that McGuire and the Gum Tree Defendants conspired with regard to confidential information and/or trade secrets. Thus, to state a claim under the underlying complaint, the allegedly misappropriated information would necessarily not be an "advertisement" as it could not be published to the general public, or even a specific market segment, and still be considered a trade secret. <u>See</u> <u>Cataphote Corp. v. Hudson</u>, 422 F.2d 1290, 1293 (5th Cir. 1970) (noting that the subject matter of a trade secret must be secret and an "item or process of public or general knowledge in an industry cannot be appropriated by one as his own secret"). Further, no allegations of copyright, trade dress or slogan infringement are facially evident from the complaint. Thus, the Gum Tree Defendants are unable to show an "offense" such that the underlying complaint would be covered by alleging an "advertising injury." Accordingly, Nationwide owes no duty to defend for a personal or advertising injury under insurance policies

identified as ACP CAF 5604706782; ACP BPHM 5604706782; 63 PR 27441-3002; ACP CAF 5604905932; ACP GLGO 5614905932; and ACP GLO 5604905932.

<em>a. Policy Exclusions</em>

Regardless of whether a proper allegation of "advertising," "personal injury" or "advertising injury" is present in the underlying complaint, however, Nationwide contends that exclusions to the policies preclude a duty to defend. Two exclusions are especially pertinent to the underlying allegations here – the "Knowing Violation of Rights of Another" exclusion and the "breach of contract" exclusion.

The "Knowing Violation of Rights of Another" exclusion prohibits coverage of "personal and advertising injury" "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and inflict 'personal and advertising injury.'" See Nationwide policies 63 PR 274471-3002; ACP GLO 5904905932; ACP GLGO 5614905932; ACP BPHM 5604706782; ACP CAF 5604706782. The underlying complaint alleges that the Gum Tree Defendants knew about McGuire's Employment Agreement with Lexington Relocation and intentionally interfered by employing her and receiving confidential information in violation of that contract. Lexington Relocation insists that the Gum Tree Defendants caused McGuire to breach her Employment Agreement even being aware of that agreement. The Court finds that the "Knowing Violation of Rights of Another" provision successfully excludes coverage for any "advertising injury" as alleged in the underlying complaint. Moreover, as noted by the Mississippi Supreme Court, the Gum Tree Defendants "cannot purchase insurance coverage for its intentional, illegal activities." Delta Pride, 697 So. 2d at 405. The allegations of the underlying complaint clearly contend that the Gum Tree Defendants knew McGuire was bound by the Employment Agreement and strictures on her post-

22

employment conduct but intentionally acted against Lexington Relocation's contractual interests anyway.

The second exclusion applicable here provides that the insurance does not apply to advertising injury arising out of "breach of contract." 63 PR 274471-3002; ACP GLO 5904905932; ACP GLGO 5614905932 (the insurance does not apply to personal and advertising injury arising out of "breach of contract."); 63 BP 272-932-3001. Although the Gum Tree Defendants were not parties to the contract allegedly breached, i.e., the employment contract between McGuire and Lexington, no such limitation to the policy exclusion is evident from the face of the insurance contract. The exclusion explicitly states, "This insurance does not apply to . . . 'Advertising injury' arising out of . . . Breach of contract, other than misappropriation of advertising ideas under an implied contract." Because the allegations of the underlying complaint are premised on a breach of contract, the Court finds this exclusion to coverage to apply.[5]

The Court has thoroughly reviewed the underlying complaint and all insurance policies at issue here and finds based on these documents that no duty to defend Gum Tree Property Management, Wilson Coleman, or TSG against the underlying complaint arises pursuant to those policies.

---

[5] Two insurance policies vary the breach of contract exclusion by stating that the policies do not apply to "advertising injury" arising out of "[f]ailure of performance of any contract or agreement . . . ." 63 CU 274471-3003 (emphasis added); see 63 CU 272932-3002 ("[t]his insurance does not apply to . . . advertising injury arising out of: (1) failure of performance of *any* contract or agreement, other than the unauthorized appropriation of ideas based upon an alleged breach of an implied contract.") (emphasis added). Because the Court finds the "breach of contract" exclusion to apply, the exclusion to coverage prevents the imposition of the duty to defend pursuant to the umbrella policy. See Legacy Condominiums, Inc. v. Landmark American Ins. Co., 2008 WL 80373, * 4 (S.D. Miss. Jan. 4, 2008) (citing Guaranty Nat. Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 194 (5th Cir. 1998)); U.S. Fidelity and Guar. Co. v. B & B Oil Well Serv., Inc., 910 F. Supp. 1172, 1182 (S.D. Miss. 1995).

*b. Causal Connection*

Even if the underlying allegations were found to be committed in the course of advertising, within the definition of "offense" as listed in the insurance policies, and able to surpass the examination of exclusions under the insurance policies, the Court finds that there is no causal link between the "advertising" and the alleged "advertising injury" such that coverage would be expected. The Mississippi Supreme Court has recognized that the best articulation of an insured's objectively reasonable expectation about the scope of coverage of an "advertising injury" requires a causal connection between the alleged "injury" and the insured's "advertising activities." See Delta Pride Catfish, 697 So. 2d at 404 (noting that this "conclusion is partly a matter of interpretation and partly a matter of common sense"). Indeed,

> [a]s a matter of interpretation, the context of the [insurance] policy strongly indicates the requirement of a causal connection. The other types of "advertising injury" enumerated in the policy often do have a causal connection with advertising. "Defamation," whether libel or slander, occurs upon publication. "Violation of right of privacy," in the advertising context, is virtually synonymous with unwanted publicity. "Infringement of copyright, title or slogan" . . .
>
> Moreover, as a matter of common sense, an objectively reasonable insured would not expect "advertising injury" coverage to extend as far as the [appellant] argues it should extend. Virtually every business that sells a product or service advertises, if only in the sense of making representations to potential customers. If no causal relationship were required between "advertising activities" and "advertising injuries," then "advertising injury" coverage, alone, would encompass most claims related to the insured's business.

Id. at 404-05 (quoting Bank of the West v Superior Court of Contra Costa Co., 833 P.2d 545, 559-60 (Cal. 1992)).

Here, there is no link between the alleged advertising activities and injuries because the injury could have occurred independent of any advertising by the Gum Tree Defendants. Stated another way, because Lexington Relocation would have still suffered the same injury and could

have asserted the same claim with or without any "advertising" by the Gum Tree Defendants, there is no causal connection between the alleged "advertising activities" and "advertising injury." See Delta Computer Corp. v. Frank, 196 F.3d 589, 591 (5th Cir. 1999) (underlying complaint plaintiff would have suffered same injury and asserted same claims with or without any independent advertising, therefore, no coverage under insurance policy for "advertising injury"). Clearly, the injury suffered by Lexington Relocation was a result of Misty McGuire's alleged misappropriation of trade secrets. Thus, regardless of whether the Gum Tree Defendants actually advertised or performed any "advertising activities," the claims against that entity for allegedly receiving trade secrets would be the same. See Sentry Ins. v. R.J. Weber Co., Inc., 2 F.3d 554, 557 (5th Cir. 1993). No causal connection between the alleged activities of the Gum Tree Defendants and the alleged injury suffered by Lexington Relocation exists. Therefore, no coverage for "advertising injury" is available. Delta Computer Corp., 196 F.3d at 591-92.

*Conclusion*

There is no duty to defend or indemnify the Gum Tree Defendants from the underlying cause of action in the Nationwide insurance policies. See Evanston Ins. Co. v. Neshoba Cnty. Fair Ass'n, 442 F. Supp. 2d 344, 346 n.1 (S.D. Miss. 2006) (holding that "if there is no duty to defend, there can be no duty to indemnify"). Accordingly, Nationwide's Motion for Partial Summary Judgment [51] and Motion for Partial Summary Judgment [151] are GRANTED. The Gum Tree Defendants' Motion for Summary Judgment [75] is DENIED. Judgment is entered in favor of Nationwide as to the primary Declaratory Action.[6]

---

[6] The holding by the Court that Nationwide has no duty to defend or indemnify the Gum Tree Defendants in the underlying litigation also MOOTS the Gum Tree Defendants' Appeal [171] of the Magistrate Judge's decision to deny their Motion to Amend to add a claim for bad faith denial of claim to the Counterclaim.

SO ORDERED, this the 24th day of March, 2014.

       **/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**